**Sherreal ABDULWALI, Plaintiff,**

v.

**WASHINGTON METRO AREA TRANSIT AUTHORITY, Defendant.**

**No. CIV.A.99–1905HHK/DAR.**

United States District Court, District of Columbia.

April 18, 2000.

---

William P. Lightfoot, Jr., Koonz, McKenney, Johnson, Depaolis & Lightfoot, Washington, DC, for Plaintiff.

Fredric H. Schuster, Mark F. Sullivan, WMATA, Office of General Counsel, Washington, DC, for Defendant.

### MEMORANDUM ORDER

DEBORAH ANN ROBINSON, United States Magistrate Judge.

Counsel for the parties appeared before the undersigned United States Magistrate Judge on February 11, 2000 for a hearing on defendant's Motion for Entry of a Protective Order ("Def.'s Mot.")(Docket No. 14) and Plaintiff's Cross Motion for a Protective Order ("Pl.'s Mot.")(Docket No. 16). The subject of the cross motions for protective order is an independent psychiatric examination of plaintiff ("the examination").[1] Defendant seeks an order precluding plaintiff from having her attorney present and recording the examination. Memorandum of Points and Authorities in Support of Defendant's Motion for the Entry of a Protective Order ("Def.'s Mem.") at 6. By her cross motion, plaintiff seeks an order allowing her counsel to be present at the examination and allowing her to record the examination. Memorandum of Points and Authorities in Support of Plaintiff's Cross Motion for a Protective Order and in Response to Defendant's Motion for a Protective Order ("Pl.'s Mem.") at ¶ 12. Plaintiff also requests the following "additional safeguards": (1) that the examiner be precluded from asking any questions concerning the accident, and restrict his examination to prior and subsequent mental history; (2) that the examiner be required to supply counsel with a copy of any notes the examiner takes during the examination, a

---

1. Defendant refers to the examination as an independent psychiatric medical examination. Plaintiff takes issue with this characterization and refers to the examination as a psychiatric examination by defendant's retained expert. *See* Memorandum of Points and Authorities in Support of Plaintiff's Cross Motion for a Protective Order at 1. The Court will refer to the proposed examination as "the examination."

typewritten copy of any handwritten notes and the raw data of any tests performed; (3) that the examiner be required to provide copies of tapes if the examiner routinely records examinations for his own use; (4) that the examination be by interview only and that the plaintiff not be required to complete any form, questionnaire or interrogatory; and (5) that the examination be limited to three hours. Pl.'s Mem. at ¶ 13.

## I. BACKGROUND

Plaintiff is the mother of Tyri Hammond, a six year old boy who died from injuries sustained during an accident on a Metro train on February 5, 1999. Tyri was separated from his mother when he boarded a Metro train and his mother remained on the platform. He attempted to cross between cars to get closer to his mother on the platform and sustained fatal injuries. Plaintiff filed suit against the Washington Metropolitan Area Transit Authority ("WMATA") on July 15, 1999 on her own behalf and as the personal representative of Tyri Hammond. Plaintiff seeks damages for Tyri's pain and suffering (Count I ); loss of consortium (Count II); wrongful death (Count III); a survivor's action (Count IV); and negligent infliction of mental anguish, on a bystander theory of liability (Count V).

## II. DISCUSSION

Plaintiff concedes that the defendant has the right to conduct the psychiatric examination of plaintiff pursuant to Rule 35 of the Federal Rules of Civil Procedure. Pl.'s Mem. at ¶ 1. In her written memorandum, plaintiff repeatedly maintains that the examination "could easily be transformed into a de facto deposition." Id. at ¶ 5. As the basis of her motion for a protective order, plaintiff states that she is

> currently pregnant and expecting the delivery of her child in early March. The stress of the accident coupled with her late term pregnancy puts her in a debilitated condition. She is no match for an experienced psychiatrist who may deliberately or inadvertently seek to explore areas not relevant or material to arriving at a diag-

nosis which could leaf to difficulties for the plaintiff in the on-going litigation.

Pl.'s Mem at 5–6.

At the hearing before the undersigned, counsel for the defendant agreed that given plaintiff's condition and the absence of a firm trial date, the examination of the plaintiff could take place after she gives birth. When the undersigned specifically asked counsel for the plaintiff to articulate any need for the accommodations requested other than her pregnancy, counsel stated that defendant "should not have a second opportunity to depose the plaintiff."

In defendant's consolidated Opposition to Plaintiff's Cross–Motion for a Protective Order and Reply to Plaintiff's Response to WMATA's Motion for a Protective Order ("Def.'s Opp'n")(Docket Nos. 18 and 19), defendant asserts that "[t]here is absolutely no basis to support" the allegations that its expert psychiatrist, Dr. Berger, will attempt to take advantage of plaintiff's emotional condition or trick her into making some admission against her interest. Def.'s Opp'n at 1. Plaintiff further asserts that "[o]ne of the threshold questions regarding her psychiatric claim is the origin ('s) of her condition[,]" and that

> Dr. Berger like any other physician has a right to take a history from Ms. Abdulwali regarding how she believes the incident occurred and any part she may have played which resulted in the tragic event in order to form his opinion as to the sole or multiple causes of Ms. Abdulwali's present emotional state.

Id. at 2.

For the reasons set forth below, the undersigned finds that plaintiff has failed to demonstrate that the protections she seeks are warranted. Accordingly, her motion for protective order will be denied.

### A. Presence of Counsel

The precise issue of the presence of counsel during a psychiatric or medical examination has not been addressed by this Court in any published opinion. Defendant relies upon the Memorandum Order in Cassano v. Washington Metro. Area Transit

*Auth.,* Civ. A. No. 92–16285 (Super.Ct.D.C. August 31, 1993)(Burnett, J.), in which the court granted defendant WMATA's motion for a physical examination and denied plaintiff's request to have his counsel present during the examination. The court concluded that

> it is this Court's view that allowing [counsel's] observance should not be permitted, except in the rare and exceptional[ ] cases. Defense counsel or other observers are not normally present when a plaintiff is examined by his or her own physicians and this Court is of the view that there should be equality of treatment between litigants, barring a showing of exceptional need to depart from this principle.

*Cassano,* Civ. A. No. 92–16285 at 1.

While the federal courts which have considered this issue are divided, the "greater weight of authority favors the exclusion of the Plaintiff's attorney from the conduct of a Rule 35 examination." *Tomlin v. Holecek,* 150 F.R.D. 628, 631 (D.Minn.1993)(surveying authority and holding that plaintiff was not entitled to have her counsel present during psychological examination); *see also Cline v. Firestone Tire & Rubber Co.,* 118 F.R.D. 588 (S.D.W.Va.1988)(holding that plaintiff not allowed to have attorney present during neuropsychological examination); *Brandenberg v. El Al Israel Airlines,* 79 F.R.D. 543 (S.D.N.Y.1978)(holding plaintiff not entitled to have her attorney present during psychiatric exam); *Dziwanoski v. Ocean Carriers Corp.,* 26 F.R.D. 595, 598 (D.Md.1960)(holding that "[t]he presence of the lawyer for the party to be examined is not ordinarily either necessary or proper; it should be permitted only on application to the court showing good reason therefor"). *But see Vreeland v. Ethan Allen,* 151 F.R.D. 551 (S.D.N.Y.1993)(holding that authorizing presence of plaintiff's attorney at psychological exam was not abuse of discretion); *Langfeldt–Haaland v. Saupe Enter., Inc.,* 768 P.2d 1144, 1146 (Alaska 1989)(holding that counsel are allowed to attend and record court-ordered medical examinations as a matter of course).

In the instances in which the presence of a third party has been allowed, "[e]ach of these

rulings has been grounded in the particular facts of the case. None has found an absolute right to have an attorney present during a psychiatric examination." *Tirado v. Erosa,* 158 F.R.D. 294, 295 (S.D.N.Y.1994)(*comparing Vreeland v. Ethan Allen,* 151 F.R.D. 551 (S.D.N.Y.1993)(permitting plaintiffs' attorney to attend psychological examinations), *and Di Bari v. Incaica Cia Armadora,* S.A., 126 F.R.D. 12 (E.D.N.Y.1989)(allowing a court reporter, but not an attorney, to be present at a psychiatric examination), *with Duncan v. Upjohn Company,* 155 F.R.D. 23 (D.Conn.1994)(plaintiff's physician not permitted to attend psychiatric examination), *and Tonge v. Kelly,* No. 89 Civ. 4182, 1993 WL 16121 (E.D.N.Y. Jan. 15, 1993)(no tape recording device permitted in psychiatric examination), *and Brandenberg v. El Al Israel Airlines,* 79 F.R.D. 543, 546 (S.D.N.Y.1978)(plaintiff's attorney not permitted to attend psychiatric examination), *and Swift v. Swift,* 64 F.R.D. 440 (E.D.N.Y.1974)(plaintiff's physician not permitted to attend examination to determine mental competency)).

The undersigned finds that in the instant case, plaintiff has failed to show a compelling need for the presence of her attorney during her psychiatric examination. The psychiatrist who is scheduled to examine plaintiff, Dr. Allan S. Berger, stated:

> To the greatest extent possible, the examination should be conducted in a private, quiet and comfortable setting free from distractions and interference. The presence of a third party during the examination or of camera/video equipment or of recording devices is inimical to the success of such an examination because it/they distort psychological openness and spontaneity. Consequently, such interfering variables may invalidate the examination findings and an inference that may be drawn therefrom.

January 10, 200 letter of Dr. Allan S. Berger, M.D., Def.'s Mot. at Ex. 3. Due to the agreement that the examination will not take place until after she has given birth, plaintiff's concerns regarding her "debilitated condition" are no longer relevant. The only other concern articulated by plaintiff is that the

examination will turn into a "second deposition" of the plaintiff. This concern is allayed by counsel's ability to confer with plaintiff regarding the exam, review Dr. Berger's report in accordance with Rule 35 of the Federal Rules of Civil Procedure, depose Dr. Berger, and cross-examine Dr. Berger at trial. *See Dziwanoski*, 26 F.R.D. at 598 (holding that "[t]hese measures adequately safeguard the parties in the ordinary case; exceptional cases can be dealt with as they arise"); *see also Sidari v. Orleans County*, 174 F.R.D. 275, 291 (W.D.N.Y.1996)(stating that "[a]s a general rule, the safeguards in Rule 25(b) and the general discovery rules are sufficient to protect a party's rights.")

## B. *Recording of Examination*

■ Plaintiff cites *Moore v. Washington Hosp. Ctr., Inc.*, Civ. A. No. 798–95 (Super.Ct.D.C. August 8, 1996), a Memorandum and Order of the presiding judge while seated on the Superior Court of the District of Columbia, allowing a plaintiff to record by audio and/or videotape the his medical examination by defendant's expert. In *Moore*, the court held that defendant's assertion that "'candor would be utterly thwarted and frustrated,' is not supported by anything other than intuition." *Moore*, Civ. A. No. 798–95 (internal citation omitted).

However, in *Moore*, the court addressed a medical, rather than a psychiatric examination. In the instant case, defendant's assertion is supported by the opinion of the psychiatrist, Dr. Berger, who states that "the presence of . . . camera/video equipment or of recording devices is inimical to the success of such an examination because it/they distort psychological openness and spontaneity [and] may invalidate the examination findings and an inference that may be drawn therefrom." January 10, 200 letter of Dr. Allan S. Berger, Def.'s Mot. at Ex. 3. Thus, defendant's assertion that the recording of the examination will disrupt the examination is not based on intuition, but rather, on the opinion of the expert who is to conduct the examination.

In *Tomlin*, as in the instant case, the examiner, Dr. Aletky, filed an affidavit stating that "taperecording[ ] is inimical to the conduct of a valid psychiatric examination." 150 F.R.D. at 631. The court observed:

Notably, Dr. Aletky's opinion was not controverted by any other expert in these proceedings and, generally, her concerns are corroborated by those authorities which have considered the argument and which recognize that psychological examinations necessitate an unimpeded, one-on-one exchange between the doctor and the patient. *Cline v. Firestone*, supra at 589 (citing[ ] *Durst v. Superior Court for Los Angeles County*, 222 Cal.App.2d 447, 452–53, 35 Cal.Rptr. 143 (1963)); *Brandenberg v. El Al Israel Airlines*, supra at 544, *Swift v. Swift*, 64 F.R.D. 440, 443 (E.D.N.Y. 1974).

*Id.* at 631–32. *But see Sidari*, 174 F.R.D. at 291 (directing that mental examination of plaintiff be recorded by audio tape).

In the instant case, plaintiff, like the plaintiff in *Tomlin*, offered neither an expert of her own, nor any evidence or argument to controvert Dr. Berger's opinion. Instead, plaintiff relied only on her unsupported assertion that psychiatric examinations conducted by experts retained by defendants are inherently manipulative attempts to depose the plaintiff.

For the foregoing reasons, as well as the reasons discussed with respect to the presence of counsel at the examination, the undersigned finds that plaintiff has failed to show sufficient need to require that she be allowed to record the examination.

## C. *Additional Safeguards*

■ With respect to plaintiff's request for "additional safeguards" limiting the scope of the examination, the undersigned finds that the requirements of Rule 35(b) of the Federal Rules of Civil Procedure adequately safeguard the interests of the plaintiff, and that further safeguards are unwarranted. Plaintiff requests (1) that the examiner be precluded from asking any questions concerning the accident and restrict his examination to prior and subsequent mental history; (2) that the examination be by interview only and that the plaintiff not be required to complete any form, questionnaire or interrogatory;

and (3) that the examination be limited to three hours.[2] Pl.'s Memo at ¶ 13.

Dr. Berger states that

A psychiatric evaluation consists of review of all relevant records and documents; gathering of past history including medical history; assessment of present illness to include inquiry into feelings and relationships; formal mental status examination; and formulation of a diagnosis. Psychological testing is not routinely performed.

January 10, 200 letter of Dr. Allan S. Berger, M.D., Def.'s Mot. at Ex. 3. Plaintiff offered no evidence that Dr. Berger's description of the psychiatric evaluation he expects to conduct exceeds the customary bounds of a psychiatric examination. Plaintiff has not articulated any basis for the limitations on time and scope of the examination which she requests. *See Gavenda v. Orleans County,* 174 F.R.D. 272, 274 (W.D.N.Y.1996)(declining to impose a time limitation upon psychiatric examination of plaintiff).

In *Lahr v. Fulbright & Jaworski, L.L.P,* 164 F.R.D. 196, 202, the court held that the nature and scope of mental examination of former employee who brought claims for employment discrimination and intentional infliction of emotional distress was not overly intrusive or broad where the exam included a three hour clinical intake and evaluation, a full history of the plaintiff's personal life, as well as psychological tests. The court stated that "for the court to intervene and limit the type of examination an expert has indicated is necessary in order to analyze plaintiff's claims would subvert the truth finding function inherent in Rule 35 examinations." *Id.*

In the instant case, plaintiff has offered no compelling reason to intrude upon the examining doctor's discretion regarding the scope, means and timing of her psychiatric examination; nor has she shown that any of the components of the psychiatric examination as described by Dr. Berger are unduly intrusive or overbroad. The undersigned is "hesitant—absent a compelling reason—to condition a Rule 35 examination upon restrictions which will foster a greater degree of advoca-

cy in the conduct such examinations than is, already, unavoidably present," because "the infusion of the adversary process into the psychologist's examining room [is] ... inconsistent with the just, speedy and inexpensive resolution of civil disputes, and with the dictates of Rule 35." *Tomlin,* 150 F.R.D. at 631–32. Accordingly, plaintiff's requests to limit the scope and duration of the examination will be denied.

## III. CONCLUSION

Plaintiff has failed to show a compelling need for the presence of counsel during the psychiatric examination, the recording of the examination, or the other limitations upon the scope and timing of the examination. Accordingly, for the foregoing reasons, it is, this 18th day of April, 2000,

**ORDERED** that Plaintiff's Cross Motion for a Protective Order (Docket No. 16) is **DENIED**; and it is

**FURTHER ORDERED** that Defendant WMATA's Motion for Entry of a Protective Order (Docket No. 14) is **GRANTED**, and that plaintiff is precluded from having her counsel present during the examination and from recording the examination; and it is

**FURTHER ORDERED** that plaintiff shall appear for the examination after she gives birth, but before May 19, 2000.

---

2. The undersigned determined at the hearing that Dr. Berger does not routinely record examinations for his own use; accordingly, plaintiff's

request for a copy of Dr. Berger's own recording of the examination is moot.